WALDO SALT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY D. SALT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26049, 26048.   Promulgated May 5, 1952.

*George T. Altman, Esq.*, for the petitioners.
*Wm. P. Flynn, Jr., Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* Petitioners failed to make proof of the expenditure by them of any sum for travel or hotel bills, and accordingly the Commissioner's disallowance of the claimed deduction of $384.77 therefor is sustained.

The evidence, however, does establish that petitioners in 1947 did expend $2,667 for attorneys' fees or legal expenses, and under the facts and the record as a whole we are of the opinion that same constituted "ordinary and necessary" business expenses of petitioner within the meaning of section 23 (a) of the Internal Revenue Code,[1] and hence are deductible.

That such expenditure was unusual does not mean that it was not "ordinary" within the meaning of the section. As was said in *Welch* v. *Helvering*, 290 U. S. 111:

\* \* \* Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. \* \* \*

This expression was quoted by Mr. Justice Minton in *Heininger* v. *Commissioner* 133 F. 2d 567, whose opinion was affirmed by the Supreme Court in *Commissioner* v. *Heininger*, 320 U. S. 467, wherein it was said that "whether an expenditure is directly related to a business and whether it is ordinary and necessary" are ordinarily questions of fact.

Attorney's fees and legal expenses incurred by a taxpayer in litigation directly connected with his business constitute a "business expense" and are deductible as such under section 23 (a), such as in a suit against the taxpayer by a former partner for accounting, *Kornhauser* v. *United States*, 276 U. S. 145, or a suit by the taxpayer to en-

---

[1] Sec. 23. In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
   (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, \* \* \*

join the enforcement of a mail fraud order, the result of which litigation permitted the taxpayer to remain in business for 2 years, *Commissioner* v. *Heininger, supra*, or by a taxpayer army officer in his defense against a court martial proceeding, wherein conviction would have resulted in his dismissal from the service, *Lindsay C. Howard*, 16 T. C. 157.

It is not essential to the deductibility of attorney's fees that there be litigation. Legal services are frequently required in forums other than courts, and also advice of attorneys as to legal rights and procedure is often necessary. The vital test as to deductibility is whether the services of an attorney are required by the taxpayer in a matter directly connected with his business. The facts in the instant case meet that test.

That petitioner's employment of attorneys was occasioned by and directly connected with his business is apparent. The investigation by the Committee before which he was summoned to give testimony related directly to the business in which he was engaged. The motion picture industry, of which he was a part, and also his individual connection and activities therein were the subject of the investigation, and it was about same that he was summoned to testify. The result of the investigation was calculated to affect the future of the motion picture industry as a whole and also petitioner's employment therein. A specific result was the threatened blacklisting which would have deprived petitioner of further employment in the industry and which his attorneys succeeded in averting.

Applying here the reasoning and an expression used in the *Heininger* case, *supra*, "upon being served" with a subpoena to appear before the Committee, petitioner "was confronted with a new business problem which involved" his present and future business welfare. Ordinary business prudence demanded that petitioner employ counsel to advise with and represent him in such an emergency.

That petitioner and others of the group believed the employment of counsel was required in the carrying on of their business and was related thereto is evidenced by the fact that the legal expenses paid by each were based upon a pro rata portion of his earnings in the motion picture industry.

Respondent does not question the reasonableness of the legal expenses paid by petitioner, which were less than 10 per cent of his annual earnings from his business as a script writer in the industry.

There is no merit in respondent's suggestion that the legal expenses are not deductible because of the inhibition in section 23 (o) (2), I. R. C., or because of Regulations 111, section 29.23 (o)–1. The deduction is not claimed under either of these provisions, and furthermore no part of same was used in propaganda "to influence legislation," nor was the same "expended for lobbying purposes."

Respondent on brief says that the fund in question "was used not for the purpose of merely 'lobbying' or 'influencing legislation' but for the purpose of directly opposing and resisting the actual investigative function of a Congressional committee." The record does not so show. In support of this allegation respondent cites only the testimony of Robert W. Kenny, petitioner's chief counsel, and his answer to a single question on cross examination by respondent, wherein Kenny admitted that in conferring with the movie producers the desirability of securing an end to the hearings was mentioned, but in answer to respondent's next question, "Did you actually attempt to bring to a close these hearings?" the witness replied in the negative, saying that in view of the wide publicity given the hearings by the press and public sentiment created thereby "it would have been an idle act to have done anything to prevent the hearing taking place." Petitioner's counsel was not employed to resist or to try to put an end to the hearings by the Committee, but to aid petitioner in his role as a witness before the Committee, and that was the character of service they rendered.

Finally, respondent's brief declares:

The general principle that the consequences of a tax deduction must not frustrate sharply defined National policies has been reiterated by the Court on several occasions. *Commissioner* v. *Heininger*, 320 U. S. 467; *Textile Mills Securities Corp.* v. *Commissioner*, 314 U. S. 326; *Anthony Cornero Stralla*, 9 T. C. 801.[2]

Respondent does not apply this abstract statement of law to the facts of this case. Conceding its correctness, we fail to see wherein it is relevant or applicable.

None of the cases cited by respondent sustains his contention on the issue here involved. The *Heininger* case, *supra*, from which we have heretofore quoted, and which is also cited by petitioner, we think is excellent authority for petitioner. In the *Textile Mills* case, *supra*, the expenditures were not deductible because they were spent for "lobbying purposes." In the *Stralla* case, *supra*, the taxpayer was engaged in an unlawful business, and the opinion therein, in distinguishing it from the *Heininger* case, said: "The Supreme Court in the *Heininger* case did specifically note that Heininger was conducting a lawful business but that certain practices in its conduct were illegal."

Here the business in which petitioner was engaged was lawful and no practices in its conduct were shown to be illegal.

Respondent's disallowance of the claimed deductions for attorneys' fees and legal expenses is reversed.

*Decisions will be entered under Rule 50.*

---

[2] Respondent cited no other cases in his entire brief.